Case 3:24-mj-00569-MEG   Document 1-1   Filed 06/28/24   Page 1 of 18

United States District Court
District of Connecticut
FILED AT NEW HAVEN

June 28, 20 24

By  S. Santos
       Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In the Matter of the Search of One iPhone and One TCL Flip Phone in the Custody of FBI New Haven Seized from Jermaine Monteeth on June 19, 2024 and Currently in the Custody of FBI New Haven | Case No. 3:24mj 569  (MEG)<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Alex Rivera, being duly sworn, deposes and says:

### INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Police Officer with the City of New Haven (NHPD) and have a hire date of January 4, 2016. From August 2022 to the present, I have been assigned to the Federal Bureau of Investigation's New Haven, Connecticut, Field Office as a sworn Task Force Officer, and, more specifically to the Safe Streets Gang Task Force. The Task Force includes special agents of the FBI, and law enforcement officers with the East Haven Police Department and the Milford Police Department. As a Task Force member, I direct the instant investigation of a drug trafficking organization (DTO) in New Haven, Connecticut along with the Shoreline towns and Cities of Connecticut stemming from East Haven to Westbrook, involving Jermaine Monteeth ("MONTEETH") and others. I have participated fully in this investigation and have also received information from other law enforcement officers. I am thoroughly familiar with the investigation and the information set forth in this affidavit based on my training and experience, written investigative reports, physical surveillance, records pertaining to cellular telephones, motor

1

vehicles, and other information, as well as lawfully recorded and intercepted communications, statements from cooperating sources, and other information I have reviewed and determined to be accurate and reliable. Because the information and evidence gathered during this investigation is voluminous, I have not included each fact known to me concerning this investigation. Instead, I have set forth those facts that I believe are necessary to establish the existence of probable cause to support the requested authorizations.

3. I am one of the case agents directing the investigation of members and associates of a drug trafficking organization ("DTO") of which Jermaine MONTEETH and others, whose identities are known to the FBI, are a part of, for violations of 21 U.S.C. § 841(a)(1) (possession with the intent to distribute and distribution of controlled substances); 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute and distribution of controlled substances); and 21 U.S.C. § 843(b) (use of a communication facility in furtherance of a controlled substance felony) (the "Subject Offenses").

4. I have participated fully in this investigation and, as a result of this participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit.

5. This affidavit is submitted in support of warrants to search the following cellular telephones, and to extract electronically stored information:

   a. **Subject Phone 1,** a black iPhone with a clear case which was seized during the arrest of MONTEETH on June 19, 2024, and which is presently in the custody of the FBI, as further described in Attachment A-1.

   b. **Subject Phone 2,** a gray TCL flip cellular telephone, which was seized during the arrest of MONTEETH on June 19, 2024, and which is presently in the custody of the FBI, as further described in Attachment A-2.

6. The proposed warrants would authorize the forensic examination of the **Subject Phone 1** and **Subject Phone 2** (collectively, the "**Subject Phones**") for the purposes of identifying

electronically stored information particularly described herein and in Attachment B. For the reasons set forth below, there is probable cause to believe that such information contains evidence of the Subject Offenses.

7.      This affidavit does not purport to set forth all of the facts gathered during the course of the investigation of this matter. Rather, this affidavit includes only those facts which are necessary to establish probable cause to support the issuance of the requested warrants.

## **PROBABLE CAUSE**

9.      The United States, including the FBI, has conducted, and is conducting a criminal investigation of MONTEETH and others, whose identities are known to the FBI, regarding the Subject Offenses. The FBI's investigation began in October 2023.

10.     As noted, the investigation is being conducted by the FBI New Haven Safe Streets Task Force. Based on the investigation to date, I believe that MONTEETH and others are involved in a cocaine and fentanyl distribution operation involving multiple individuals, which operates all hours of the day and night, every day of the week. Members of the DTO use cellular telephones to coordinate the distribution of illegal narcotics in the "Fair Haven" and "Long Wharf" section of New Haven along with the "Shoreline" towns and cities stemming from Milford to Westbrook, Connecticut.

11.     During the investigation, law enforcement has conducted numerous controlled purchases of narcotics confirming the DTO's distribution activities. Law enforcement has conducted approximately eighteen (18) controlled purchases since February 2024 of suspected illegal narcotics from members of the DTO, including MONTEETH.

12.     Based on information obtained from confidential sources, MONTEETH was identified as a member of the drug trafficking organization and known to use two cellular phones for street-level sales, as further described below.

13. During the week ending on May 11, 2024 at the direction of, and under the supervision of investigators, a confidential source[1] ("CS-1") purchased approximately 2.5 grams of fentanyl and 1.5 grams of cocaine from MONTEETH, who was operating a white Kia Sportage bearing Connecticut registration BH52498. The Kia Sportage was registered to V.M. (DOB xx/xx/1969) of 38 Midhill Drive, Hamden, Connecticut. (V.M., per a New Haven Police Department report on April 30, 2024 is MONTEETH's mother).

14. During the controlled purchase, CS-1 called MONTEETH at phone number that ended in -4911. During the call, MONTEETH confirmed the amount of narcotics CS-1 was ordering. While CS-1 was on the phone with MONTEETH, CS-1 could hear another phone in the background could be heard with a known co-conspirator on speakerphone. MONTEETH and CS-1 continued to confirm pricing and quantity of the narcotics, while MONTEETH confirmed with the known co-conspirator if the pricing was good on a separate phone. Investigators conducting surveillance observed the Kia Sportage arrive at the agreed upon buy location, and observed CS-1 enter MONTEETH's vehicle briefly, before exiting, returning to their vehicle, and leaving the area.

15. After the transaction, CS-1 was met by investigators at a predetermined location and debriefed. CS-1 stated MONTEETH was the sole occupant of the vehicle he was operating. CS-1 provided investigators with the purchased narcotic which field tested positive for the presence of fentanyl with a gross weight of 2.5 grams and cocaine with a gross weight of 1.5 grams. DEA lab testing confirmed the product was fentanyl with a net weight of 1.368 grams. Testing on the suspected cocaine remains pending.

---

[1] CS-1 has proven to be credible and reliable having provided valuable information that was corroborated. CS-1 has prior convictions for larceny, escape, burglary, trespass, impersonation, harassment, witness tampering and failure to appear. CS-1 is cooperating for monetary compensation.

16. In addition, on June 7, 2024, the honorable Maria E. Garcia signed a pen register and trap and trace warrant with precision location for the –4911 telephone, previously identified as be using for street-level drug sales. Upon the execution of that June 7, 2024, signing with precision location data on the –4911 telephone, investigators determined that, although the –4911 telephone was used by MONTEETH to conduct street-level drug sales, it was often in possession of another member of this drug trafficking organization, who is known to me, based on the precision location placing the cellular device at this known person's residence. Based on my training and experience, MONTEETH and the other known associate are sharing the -4911 telephone to conduct drug transactions.

17. During the week ending on June 15, 2024, at the direction of, and under the supervision of investigators, a second confidential source[2] ("CS-2") purchased two (2) clear plastic bags containing approximately 19 grams of a substance that field tested positive for fentanyl from MONTEETH. During the controlled purchase CS-2 spoke with MONTEETH via a second cellphone ending in -9077, and MONTEETH directed CS-2 to the "Exit 8" area of New Haven. Through pole camera surveillance, investigators observed MONTEETH exiting an apartment near 194 Hamilton Street and entering a green Hyundai Tucson bearing New Jersey registration T45UBT and driving directly to the area where investigators observed MONTEETH exit the green Hyundai, enter CS-2's vehicle briefly, before exiting and returning to the green Hyundai and leaving the area.

18. After the transaction, CS-2 was met by investigators at a predetermined location and debriefed. CS-2 stated MONTEETH was the sole occupant of the vehicle he was operating.

---

[2] CS-2 has proven to be credible and reliable having provided information that has resulted in drug and gun seizures, arrests and other valuable information that was corroborated. CS-2 is cooperating for monetary compensation.

5

CS-2 provided investigators with the purchased narcotics which field tested positive for the presence of fentanyl and had a gross weight 19 grams. Confirmatory lab analysis is pending. Investigators have reviewed the audio and video recording of the meeting between CS-2 and MONTEETH, and it is consistent with CS-2's report. While reviewing the audio and video recording, investigators confirmed CS-2's account.

19. Through multiple controlled purchases along with pole camera and physical surveillance, investigators know MONTEETH to be actively driving a green Hyundai Santa Fe bearing New Jersey registration T45UBT[3], which is registered to the rental company Avis and was rented by V.M., who, as noted above, was identified as MONTEETH's mother.

20. On June 19, 2024, I, Task Force Officer Alex Rivera conducted a motor vehicle stop on the green Hyundai Tucson bearing New Jersey registration T45UBT on Hamilton Street in New Haven where MONTEETH was observed failing to stop for a red traffic control signal. During the traffic stop, MONTEETH stopped the vehicle directly in the middle of Hamilton Street and immediately put his hands up in the air and began looking around. MONTEETH was instructed to pull his vehicle to the right to not impede traffic which he did. Upon approaching the passenger side of vehicle, Officer Borges of the New Haven Police Department observed MONTEETH looking in his mirror at the Police vehicle. Officer Borges made contact with MONTEETH which startled him enough that made him physically react. TFO Rivera approached the driver's door and observed MONTEETH taking heavy breaths and could physically see his hands shaking due to nervousness. Due to MONTEETH's nervous behavior TFO Rivera asked MONTEETH if he possessed any firearms or drugs. MONTEETH lifted up a bag of Marijuana from the passenger seat and stated that he was only in possession of Marijuana. MONTEETH declined a consensual

---

[3] In a prior affidavit by FBI Special Agent Ryan Halpin, the vehicle bearing New Jersey registration T45UBT was mistakenly described as a Kia Sportage.

search of his vehicle. TFO Rivera asked MONTEETH out of the vehicle and attempted to assist him out of it. MONTEETH then attempted to place the vehicle in drive and drive away but was unsuccessful. MONTEETH began to resist officers' instructions which ultimately led to MONTEETH being tased and forcefully removed from the vehicle. A search of MONTEETH's person revealed that MONTEETH was in possession of a stolen firearm inside of his inner underwear next to his groin area. During a search of the Hyundai, NHPD Officer Borges located a blue and white sock, tied and knotted, containing a clear plastic bag which contained: eleven (11) small green tinted Ziploc bags, twenty-nine (29) yellow tinted Ziploc bags, one (1) empty yellow tinted Ziploc bag, and six (6) white wax folds, all containing a powder-like substance. The powder substance was field tested and tested positive for the presence of fentanyl. Also inside of the vehicle, investigators located and seized a black iPhone with a clear case and a gray TCL flip phone was located. Due to MONTEETH being in possession of a stolen firearm along with a large quantity of narcotics, TFO Rivera seized both cellphones. MONTEETH's state charges related to this arrest remain pending.

21. Based on my training and experience and discussions with other investigators, it is known that persons who traffic and transport illegal narcotics frequently use cell phones to maintain contact with co-conspirators during travel and also use cell phones to contact persons where the drugs are destined. This frequently occurs due to the transient nature of these trafficking operations and because members of these conspiracies frequently travel and require coordination of their movements to pick up and drop off drugs at designated times and places.

22. Based on my training and experience I know that narcotic traffickers commonly maintain addresses or telephone numbers in cellular telephones, which reflect names, addresses and/or telephone numbers of their clients and associates in the drug trafficking organization.

Traffickers also maintain photographs and videotapes of participants and associates in narcotic trafficking activity, and property acquired as a result of narcotics trafficking activities. Drug distributors also communicate with their criminal associates frequently via text message and also various encrypted applications such as WhatsApp and they frequently make use of and maintain multiple cell phones to compartmentalize operations and upon which those text messages and encrypted communications often remain stored.

23. Based upon the foregoing, there is probable cause to believe, and I do believe, that MONTEETH has committed violations of the Subject Offenses and that there is probable cause to believe that electronically stored information described herein and, in Attachments B-1 and B-2, is recorded on the **Subject Phones** and constitutes evidence of the Subject Offenses.

## ELECTRONIC DEVICE SEARCHES

24. Based on my training and experience, and consultation with, and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know the following information tends to exist on wireless telephones, including wireless telephones utilized by those engaged in narcotics trafficking activities:

   a. the telephone call number and other identifiers (ESN number, IMSI, IMEI, MEID, and SIM card number) associated with said device/s;

   b. call logs/histories, numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images and videos stored in the memory of said device/s;

8

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described offenses;

    d. records which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

    e. information showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

    f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

    g. saved searches, locations, and route history in the memory of said device/s; and

    h. internet browsing history, to include, internet searches in the memory of said devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the

warrant, but also forensic evidence that establishes how the **Subject Phones** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Phones** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Phones** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. Based on the above stated factual details of the investigation, there is probable cause to believe, and I do believe, that the **Subject Phones** contains stored electronic information, including telephone numbers, digits, names, text messages, photographs, videos, identifying information such as telephone numbers and serial numbers, the originating telephone numbers, and other electronic information as outlined in Attachment B, that will assist law enforcement in this investigation and which is evidence of the violations of the above.

## CONCLUSION

28. For the reasons above, I respectfully request that the Court issue the proposed search warrants.

29. I further request that the Court authorize execution of the warrants at any time of day or night because the **Subject Phones** are already in possession of the FBI.

Respectfully submitted,

ALEX RIVERA
Digitally signed by ALEX RIVERA
Date: 2024.06.28 15:14:21 -04'00'

_____
Alex Rivera
Task Force Officer, Federal Bureau of Investigation

Subscribed and sworn to before me by telephone on June  28 , 2024.

Maria E. Garcia
Digitally signed by Maria E. Garcia
Date: 2024.06.28 16:29:17 -04'00'

_____
HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

### Property To Be Searched

A black iPhone in a clear case which was seized during the arrest of Jermaine MONTEETH on June 19, 2024, and which is presently in the custody of the FBI (the **Subject Phone 1**).

This warrant authorizes the forensic examination of **Subject Phone 1** for the purpose of identifying the electronically stored information described in Attachment B-1.

## ATTACHMENT A-2

**Property To Be Searched**

A gray TCL flip cellular telephone, which was seized during the arrest of Jermaine MONTEETH on June 19, 2024 and which is presently in the custody of the FBI (the **Subject Phone 2**).

This warrant authorizes the forensic examination of **Subject Phone 2** for the purpose of identifying the electronically stored information described in Attachment B-2.

**ATTACHMENT B-1**

**Particular Things to be Seized**

All records and information contained in **Subject Phone 1** between February 1, 2024 and the present evidencing drug trafficking offenses and firearm offenses in violation of 21 U.S.C. § 841(a)(1) (possession with the intent to distribute and distribution of controlled substances); 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute and distribution of controlled substances); and 21 U.S.C. § 843(b) (use of a communication facility in furtherance of a controlled substance felony) (the "Subject Offenses"), to include the following, as they relate to the above-listed offenses:

1. the telephone number, ESN number, serial number, and SIM card number of the telephone;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 843;

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said telephone;

8. internet browsing history, to include, internet searches in the memory of the telephone;

9. images and videos in the memory of the telephone; and,

10. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that **Subject Phone 1** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B-2

### Particular Things to be Seized

All records and information contained in **Subject Phone 2** between February 1, 2024 and the present evidencing drug trafficking offenses and firearm offenses in violation of 21 U.S.C. § 841(a)(1) (possession with the intent to distribute and distribution of controlled substances); 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute and distribution of controlled substances); and 21 U.S.C. § 843(b) (use of a communication facility in furtherance of a controlled substance felony) (the "Subject Offenses"), to include the following, as they relate to the above-listed offenses:

1. the telephone number, ESN number, serial number, and SIM card number of the telephone;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 843;

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said telephone;

8. internet browsing history, to include, internet searches in the memory of the telephone;

9. images and videos in the memory of the telephone; and,

10. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that **Subject Phone 2** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.